892 P.2d 480

**MAGIC LANTERN PRODUCTIONS, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**Joseph DOLSOT, an individual, Thomas Monge, an individual, Baird Woolsey, an individual, Cinema Plaza Partners, an Idaho partnership, and Block 56 Associates, an Idaho limited partnership and successor in interest to Cinema Plaza Partners, Defendants–Respondents.**

No. 21511.

Supreme Court of Idaho,
Boise, November 1994 Term.

March 7, 1995.

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. Richard H. Greener argued.

Kneeland, Korb, Collier, Legg & Haukaas, Ketchum, for respondents Joseph Dolsot, Cinema Plaza Partners and Block 56 Associates. Bruce Collier argued.

Donovan & Praggastis, Ketchum, for respondents, Thomas Monge and Baird Woolsey. Michael F. Donovan argued.

JOHNSON, Justice.

This is a breach of contract and fraud case in which the trial court granted summary judgment dismissing the claims and awarded attorney fees to the prevailing parties pursuant to I.C. § 12–120(3).

We conclude that the trial court correctly granted the summary judgment dismissing the breach of oral contract and fraud claims. We conclude that the trial court should not have granted the summary judgment dismissing the breach of written contract claim because there was a genuine issue of material fact concerning whether the alleged contract was breached by one of the defendants. Because of this disposition, we find it unnecessary to address the award of attorney fees to that defendant.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Magic Lantern Productions, Inc. (Magic Lantern) operated a movie theater in Ketchum, Idaho. Joseph Dolsot, Thomas Monge, and Baird Woolsey, calling themselves Cinema Plaza Partners (CPP), owned real property (the property) in Ketchum as tenants in common. In fact, CPP was not a partnership. CPP planned to build a minimall (the project) on the property and to include a cinema.

CPP entered into discussions and negotiations with Magic Lantern's president, Richard Kessler, concerning Magic Lantern's participation in the project. Kessler provided CPP with information (the information) concerning the construction and operation of the proposed cinema. Kessler also reviewed and provided suggestions for improving the architectural plans (the plans) for the project. Kessler's suggestions were incorporated into the plans by CPP's architect.

Monge wrote to Kessler on August 15, 1989, stating that CPP was a partnership with a combined net worth in excess of $5,000,000, and that the expected sale price of the cinema portion of the project would be in the range of $400,000 to $450,000. Construction was expected to begin in April of 1990 and to be completed by November 1, 1990.

On August 17, 1989, Kessler wrote to CPP, stating:

This letter is regarding the proforma and selected material pertaining to the cinema and mini mall project in Ketchum, Idaho, that we have been discussing over the past several months. The material has been provided to permit further discussion & evaluation by you and/or your partnership (currently called the Cinema Plaza Partners), for the project. You understand that this letter and materials do not constitute either an offer of an interest, or a solicitation of an investment, but are provided for your information only.

By accepting this letter as indicated by your signature on the duplicate original to be returned to me, you and you partners have agreed to limit your use of the materials to the purposes stated in the previous paragraph, to assure that it will not be disclosed to any other parties, to treat it in all respects as proprietary information owned by Magic Lantern, and to refrain from any use of the material adverse to the project, or in competition directly or indirectly with Magic Lantern.

Dolsot signed the letter, indicating his acceptance of the terms stated by Kessler.

In early 1990, CPP decided not to proceed with the project. In March 1990, CPP advertised the property for sale and included this statement: "Owners have preliminary plans for a cinemaplex (movie theatre) to be included with the purchase." In May 1991, Monge and Woolsey sold their interest in the property to a third party who joined Dolsot in forming a limited partnership, Block 56 Associates (Block 56), to develop the project. Block 56 agreed to lease space in the project to another theater operator.

Magic Lantern sued Dolsot, Monge, Woolsey, CPP, and Block 56, as the successor in interest to CPP, alleging:

1. Dolsot and CPP breached the contract contained in the letter of August 17,

1989, by providing the information to third parties.

2. Dolsot, Monge, Woolsey, and CPP fraudulently represented to Magic Lantern that CPP was a partnership that would build a cinema by November 1990, which would be sold to Magic Lantern for $400,000 to $450,000.

3. Dolsot and Monge acting individually and on behalf of CPP breached an oral contract with Magic Lantern that CPP would not proceed with the project without the direct participation of Magic Lantern.

Pursuant to a stipulation, the trial court granted Magic Lantern a preliminary injunction, which the trial court dissolved after a hearing.

Later, the trial court granted summary judgment dismissing Magic Lantern's claims. The trial court also awarded attorney fees to Dolsot, Monge, Woolsey, and Block 56, pursuant to I.C. § 12–120(3), on the ground "that this is a commercial transaction."

Magic Lantern appealed. We assigned the case to the Court of Appeals, which upheld the trial court's decision. This Court then granted review.

## II.

### THERE IS NO ENFORCEABLE ORAL CONTRACT.

Magic Lantern asserts that the trial court should not have granted summary judgment dismissing its oral contract claim. We disagree.

■ In effect, the alleged oral contract was a covenant not to compete, that is, an agreement not to allow some theater operator other than Magic Lantern to participate in the project.

■ In order to be enforceable, a covenant not to compete must be reasonable in duration and geographic scope. *Shakey's Inc. v. Martin,* 91 Idaho 758, 764, 430 P.2d 504, 510 (1967). In this case, the alleged oral contract does not contain limitations concerning duration and geographic scope. Although there may be an implicit limitation on the geographic scope of the covenant because of Ketchum's isolation from other cinema mar-

kets, the covenant is unreasonable because it lacks duration. Therefore, the alleged oral contract is unenforceable.

## III.

### THE TRIAL COURT WAS CORRECT IN GRANTING SUMMARY JUDGMENT DISMISSING THE FRAUD CLAIM.

Magic Lantern asserts that the trial court should not have granted summary judgment dismissing its fraud claim. We disagree.

■ CPP admits that the representation that a partnership existed was false. The representations that CPP would build a cinema by November 1990 and would sell it to Magic Lantern for $400,000 to $450,000 are statements concerning future events. Generally, the representation forming the basis of a claim for fraud must concern past or existing material facts. Representations concerning future events are usually not considered actionable. *First Sec. Bank of Idaho v. Webster,* 119 Idaho 262, 268, 805 P.2d 468, 474 (1991). A promise or statement that an act will be undertaken, however, is actionable, if it is proven that the speaker made the promise without intending to keep it. *Id.* Therefore, CPP's representations as to future events would be actionable only if Magic Lantern could show that CPP made these representations without intending to honor them.

CPP presented evidence that CPP had intended to do business with Magic Lantern as represented and that CPP abandoned the project only after the negotiations with Magic Lantern did not produce an agreement. Magic Lantern did not produce any evidence suggesting that at the time of the alleged representations CPP did not intend to carry out the project and to include Magic Lantern as represented. Therefore, the trial court was correct in granting summary judgment dismissing the fraud claim.

## IV.

### THERE IS A GENUINE ISSUE OF MATERIAL FACT CONCERNING BREACH OF THE WRITTEN CONTRACT.

■ Magic Lantern asserts that there is a genuine issue of material fact concerning the

alleged breach of the written contract. We agree.

We first note that we have recently restated our standard of review in reviewing summary judgments. *Thomson v. Idaho Insurance Agency, Inc.,* 126 Idaho 527, 530–31, 887 P.2d 1034, 1037–38, (1994). In *Thomson,* we pointed out that the moving party has the initial burden of establishing the absence of a genuine issue of material fact, and that when the moving party has met that burden by presenting evidence that challenges an element of the nonmoving party's claim, the nonmoving party then has the burden of producing evidence to create a genuine issue of material fact concerning that element. *Id.* at 531, 887 P.2d at 1038.

The letter of August 17, 1989 creates a genuine issue of material fact concerning the existence of a written contract between Magic Lantern and Dolsot providing that Dolsot would not disclose the information to any other parties. Neither Monge nor Woolsey signed the letter; CPP was not a partnership, and there is no evidence that Dolsot acted as an agent for Monge and Woolsey in signing the letter. Therefore, any written agreement between Magic Lantern and Dolsot did not bind Monge and Woolsey. This leaves the question whether there is a genuine issue of material fact concerning breach of this alleged contract between Dolsot and Magic Lantern.

Dolsot challenged the written contract claim by testifying that he had not disclosed the information to any third party.

Magic Lantern relies on an affidavit of Kessler presented in support of Magic Lantern's motion for a preliminary injunction. This affidavit states that the information was used in the spring of 1990 "in connection with the listing of [the property] for sale for a project which would include a movie theater," and that Dolsot and Block 56 used the information in seeking zoning approval of the project. By request of counsel, this affidavit was considered by the trial court in ruling on the motions for summary judgment. We also note that Magic Lantern's amended verified complaint states that Dolsot provided the information to Block 56, and that Block 56 used the information in the development of the project. These statements create a genuine issue of material fact concerning the breach of the written contract.

## V.

## ATTORNEY FEES.

Magic Lantern asserts that the trial court should not have awarded attorney fees against Magic Lantern pursuant to I.C. § 12–120(3). We disagree, except concerning the award to Dolsot.

In *Farmers Nat. Bank v. Shirey,* 126 Idaho 63, 878 P.2d 762 (1994), the Court said:

Where a party alleges the existence of a contractual relationship of a type embraced by section 12–120(3) ... that claim triggers the application of [I.C. § 12–120(3) ] and a prevailing party may recover fees even though no liability under a contract was established.

*Id.* at 73, 878 P.2d at 772.

■ This same principle applies where the action is one to recover in a commercial transaction, regardless of the proof that the commercial transaction alleged did, in fact, occur.

Magic Lantern sought to recover on an alleged commercial transaction, as evidenced by Magic Lantern's request for attorney fees pursuant to I.C. § 12–120. No other portion of this statute other than subsection (3) could have applied to Magic Lantern's claims. The parties who prevailed in the trial court, except for Dolsot, are entitled to the attorney fees awarded by the trial court, as well as attorney fees on appeal. We leave the award of attorney fees to Dolsot or to Magic Lantern against Dolsot, to the trial court on remand, based on the trial court's determination of which of these parties is the prevailing party. This shall include the attorney fees related to this appeal.

## VI.

## CONCLUSION.

We affirm the trial court's award of summary judgment concerning the alleged breach of an oral contract, the alleged fraud,

and the written contract, except the dismissal of the written contract claim against Dolsot. We vacate the summary judgment in favor of Dolsot concerning the alleged breach of a written contract and remand this claim to the trial court for further proceedings.

We award Magic Lantern costs on appeal against Dolsot.

We award Monge and Woolsey costs and attorney fees on appeal against Magic Lantern.

McDEVITT, C.J., and TROUT and SILAK, JJ., and MOSS, J. Pro Tem., concur.